UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

LORI ARGO,

                                Plaintiff,                <u>COMPLAINT</u>

    - against -

THE CITY OF NEW YORK and ASSISTANT
DEPUTY WARDEN MARIA TEXIERA in her
capacity as an individual,                      **Jury Trial Demanded**

                          Defendants.

-------------------------------------------------------------x

       Lori Agro, by her attorneys, The Law Office of Fred Lichtmacher, PC, alleges the following upon information and belief as and for her Complaint:

       1.      This civil rights action arises from a campaign of religious discrimination, harassment and ongoing retaliation perpetrated against New York City Correction Officer Plaintiff Lori Agro for being an observant Muslim, and for suing New York City (NYC) previously and who was and continues to be discriminated against by employees, including supervisors, of the New York City Department of Corrections (DOC).

       2.      The discrimination plaintiff Argo has been subjected to began soon after her conversion to Islam in September 2010, and continues to this day.

       3.      On April 25, 2014Ms. Argo settled a religious discrimination lawsuit against NYC and members of the DOC which rather than quieting the discrimination to which Ms. Argo was subjected, inflamed and inspired members of the DOC to retaliate against her further.

       4.      Despite DOC knowing of the ongoing harassment to which Plaintiff had been and

which she continues to be subjected, the DOC continues to allow, enable and even ratify the discriminatory and retaliatory conduct and has permitted and encouraged a hostile work environment to persist to the detriment of the Plaintiff.

## Jurisdiction and Venue

5.  This action seeks redress for the deprivation under color of law of rights, privileges, and immunities secured to Plaintiff by the First and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983 as well as pursuant to the Administrative Code of the City of New York § 8-107 et seq.

6.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, §1343(3) and §1343(3).

7.  Plaintiff respectfully requests that this Court invoke its pendent jurisdiction over those Administrative Code claims arising out of the same common nucleus of operative facts as do Plaintiff's federal claims pursuant to 28 U.S.C. § 1367.

8.  Under 28 U.S.C. §1391(b) and (c), venue is proper in the Eastern District of New York because NYC resides in and a substantial part of the events or omissions giving rise to the claims alleged occurred in this judicial District.

## Parties

9.  Plaintiff LORI AGRO is a citizen of the United State of America residing in the State and City of New York, Queens County.

10. At all times relevant, she was an employee of the DOC serving as a Correction Officer.

11. Defendant NYC is a Municipal Corporation within New York State.

-2-

12.     Pursuant to its Charter, NYC has established and maintains the DOC as a constituent department or agency and at all times relevant, NYC employed the personnel involved in the incidents underlying this lawsuit.

13.     At all times hereinafter mentioned, Defendant Assistant Deputy Warden Maria Texiera (Texiera), was employed by the Defendant NYC as a DOC supervisor and the supervisor of the Plaintiff, and at all times relevant she was acting in furtherance of the business of her employer and within the scope of her employment.

14.     At all times relevant, Texiera was acting as a state actor under color of law.

15.     At all times relevant, Texiera was an agent, servant and employee acting within the scope of her employment with Defendant NYC.

## Facts Underlying Plaintiff's Claims for Relief

16.     Lori Agro was appointed as a New York City Corrections Officer on November 14, 1996 and since 2008, she has served in the DOC's Queens Detention Complex (QDC).

17.     Plaintiff has reported to work with her hair covered since she converted, as is required by her adopted religion.

18.     Texiera, arrived at the QDC Command in approximately December of 2015 and the facts complained of herein commenced at the time of her arrival and they have been ongoing and continue to the present date.

19.     Texiera made it clear since the beginning of her assignment to QDC that she knew about and was displeased with Ms. Argo's prior lawsuit with NYC and the DOC.

20.     Under Texiera's supervision, Plaintiff has endured almost daily sarcasm, by

both Texiera and her subordinate officers, improper scrutiny, less overtime than that to which she is entitled, denial of mutuals on days and for reasons that her colleagues are allowed the same and she is otherwise treated in a disparate and worse manner than her fellow officers due to her religion and due to her prior suit.

21.     There are no rooms dedicated to prayers in the QDC Command.

22.     Defendant ADW Texiera knows that and that at certain points in the day Ms. Argo would need to pray.

23.     On or about July 16, 2015, Ms. Argo placed a shawl over herself near her post to do her prayers.

24.     Defendant Texiera's secretary, called Texiera on her vacation to inform her that Ms. Argo was not in uniform.

25.     On or about July 22, 2015,Texiera approach Ms. Argo at the security office and insisted Plaintiff show her Argo's personal medical records which she was in the process of faxing.

26.     In November 2015, Ms. Argo verbally complained to Captain Cumberbatch on multiple occasions regarding her being allotted less hours of overtime than similarly situated officers.

27.     On or about November 6, 2015 Captain Cumberbatch approached Argo and offered her a weekend overtime assignment.

28.     When Texiera learned that Argo was scheduled for overtime, Texiera then instructed Captain Cumberbatch to not give Plaintiff the overtime and an argument ensued.

29.     Ultimately, two other officers were assigned the overtime assignment

Texiera ordered Plaintiff removed from, which turned out to be extremely lucrative.

30.　　On the same day Ms. Argo's car was keyed in the DOC lot.

31.　　On November 9, 2015, Ms. Argo wrote a letter called a 600AR regarding her keyed car.

32.　　On that same day, strong chemical smells suddenly began emanating from near where Plaintiff was working, apparently from chemicals which were applied in her area.

33.　　Plaintiff immediately informed a supervisor about the heavy fumes and that she was having difficulty breathing and she was taken to the hospital by EMS.

34.　　Texiera knows Plaintiff has a lung disease which was in part the reason for her transfer to QDC,  yet she was subjected to working in a small area with strong chemical odors which caused her to become ill and taken to the hospital.

35.　　Ms. Argo was out from November 2015 to March 2016.

36.　　After her return to work in June, 2016 Texiera constantly walked onto Plaintiff's post to intimidate her and scrutinize her work.

37.　　On June 12, 2016, there was a mass shooting apparently perpetrated by a Muslim male in Orlando, Florida, in which 49 people died and 58 people were injured.

38.　　The next day on June 13, 2016, Texiera went to Ms. Argo's area, searching through her drawers and area and ordered Argo's Muslim related photographs and memorabilia removed.

39.　　None of the Christian officers were ordered to remove their religious displays.

40.　　Ms. Argo contacted her union representative who then called Texiera questioning why she was harassing Plaintiff coincidentally the day after the Orlando shooting.

41.     On the same day, Plaintiff Argo was forced to go to the hospital due to stress.

42.     Plaintiff was out sick again with an extreme emotional illness from June 13, 2016 to August 2016.

43.     While out sick, Argo has constantly been interfered with by Texiera in obtaining her paycheck.

44.     When she was out sick she was instructed to go to personnel to get her check a procedure other officers out sick are not made to follow.

45.     Texiera informed the Plaintiff that if she did not come to personnel on Thursday or Friday she would have to wait until Monday to be paid, a procedure other officers were not forced to follow.

46.     Plaintiff returned to work on August 26, 2016.

47.     Plaintiff had a scheduled vacation starting on a Sunday, which would end September 20, 2016.

48.     That Monday she called in sick due to continued stress and she returned to work on March 3rd, 2017.

49.     However, Ms. Argo was forced to again call in sick around March 21, 2017, as her stress persisted and she was afraid of going back and being further abused by Texiera and Ms. Argo ultimately returned to work around July 13, 2017.

50.     While working Ms. Argo has been seeing a psychotherapist every other month and a therapist every other week and when out sick she visits the therapists twice as frequently.

51.     Plaintiff's times out sick, other than her exposure to chemicals, are due to chronic stress caused and exacerbated by Texiera's treatment of her.

-6-

52.     In July of 2017 Plaintiff called in sick again and due to her constant absence, she was placed on chronic status.

53.     In August 2017, Ms. Argo was charged with being chronic sick which could have resulted in her being medically separated.

54.     On August 25, 2017 Plaintiff submitted an appeal of her being designated chronic sick in which she explained why she was out sick so often.

55.     Ms. Argo had vacation days off from August 27, 2017- September 20th.

56.     On or about the week of September 20, 2017, Plaintiff's Personnel Supervisor returned her appellate packet to the Plaintiff.

57.     Texiera was insisting Plaintiff change the words in her appeal in which she alleged she was ill frequently due to stress emanating from harassment at DOC over her religion- which Plaintiff refused to do.

58.     On or about October 3, 2017, a Tuesday, Argo requested an emergency mutual for Friday, a common device employed by all officers when necessary/[1].

59.     However, Plaintiff was made to speak with several supervisors in multiple offices before her emergency mutual was granted days later; a practice to which other officers are not subjected.

60.     Overtime is supposed to be equally accessible to all similarly situated officers, however, Texiera gives weekend overtime to her favorites on a regular basis and not to Plaintiff.

---

[1]     There are two types of mutuals at DOC.  One is a self mutual in which an officer is allowed to take off and make up the time on another date.  The other is when an officer switches assignments with another officer, effectively getting he or she to fill in so the officer can take the day off.

61.     Usually, Argo is not offered overtime except for occasionally on the undesirable midnight tour despite volunteering and making herself available for other overtime assignments.

62.     On or about August 13, 2018 Plaintiff requested an accommodation for her religious holiday on August 20-21, 2018 and it was denied as she was informed by DOC it does not recognize that Muslim holiday.

63.     Plaintiff has been referred to as a Muslim bitch by co-workers who have not been disciplined for their discriminatory behavior.

64.     Plaintiff's co-workers are allowed to ridicule and belittle Argo's religious practices without fear of reprisals by DOC and such ridiculing is done openly and notoriously.

65.     Things have become so unpleasant for the Plaintiff at work that she sometimes hides in the bathroom until Texiera leaves her area.

66.     To this date, Officer Argo is receiving less overtime than similarly-situated Officers, gets less desirable shifts and she is frequently subjected to inappropriate comments.

67.     The terms and conditions of Ms. Argo's employment are different and worse than other similarly-situated officers and the disparate and worse treatment is attributable to her conversion to Islam as well as to her complaints about the same.

68.     Plaintiff has suffered financial, emotional and physical harms as a result of the overt discrimination she has been subjected to and that she continues to be subjected to up through the present date.

69.     Defendants, at all times relevant, acted intentionally, willfully, maliciously, negligently, with discriminatory animus, and with reckless disregard for and deliberate indifference to Plaintiff's rights and well-being.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANT TEXIERA FOR
VIOLATING PLAINTIFF'S RIGHTS UNDER
THE FREE EXERCISE CLAUSE OF THE
FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

70.     Plaintiff repeats the prior allegations as though fully stated herein.

71.     By the actions described herein, Lori Agro was deprived of her rights secured by the United States Constitution, including, but not limited to her rights guaranteed by the Free Exercise Clause of the First Amendment as made applicable to the states via the Fourteenth Amendment.

72.     Defendant Texiera has altered the terms and conditions of Argo's employment for to Argo's detriment, by the acts described above, which were and are ongoing and continue unabated to the present date.

73.     Texiera, by violating Plaintiff's rights pursuant to the Free Exercise Clause of the First Amendment, caused and continues to cause Plaintiff to suffer religious discrimination that created an intimidating, hostile, and offensive working environment and which caused and continues to cause the Plaintiff great emotional distress as well as pecuniary harms.

74.     As a consequence thereof, Lori Argo has been injured and she is entitled to both compensatory and punitive damages in amounts to be determined by the trier of fact and awards of costs and attorneys' fees are appropriate pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF FOR VIOLATING
PLAINTIFF'S FIRST AMENDMENT RIGHTS
AGAINST THE CITY OF NEW YORK
i.e., MONELL CLAIM**

75.     Plaintiff repeats the prior allegations as though fully stated herein.

76.     By the actions described, the Plaintiff was deprived of her rights under the Free Exercise Clause of the First Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, by NYC in that the Plaintiff was discriminated against as a matter of policy by the City of New York.

77.     Supervisors in the DOC and final decision makers have, as a matter of policy and practice, failed to properly train, monitor, supervise, control, and discipline its DOC staff, despite knowledge of the recurring problem of violations of the Constitutional rights of officers in ways similar to the instant matter, in spite of prior complaints of similar behavior, and that there has been no meaningful attempt on the part of NYC to investigate or forestall further incidents.

78.     Defendants who were supervisors both ignored and participated in the deprivation Plaintiff's right.

79.     NYC has been deliberately indifferent to its *de facto* policy at the DOC that allows, condones, encourages and ratifies discrimination against Muslim officers.

80.     The existence of the *de facto* municipal policy or custom of discrimination against Muslim employees is causally related to the deprivation of Plaintiff's constitutional rights protected by the First Amendment as well as pursuant to the Fourteenth Amendment.

81.     NYC caused Plaintiff to be treated differently and worse than other similarly situated NYC employees due to the fact she converted to the Muslim religion.

82.     As a consequence thereof, Lori Argo has been injured.

83.     The disparate treatment of Plaintiff persisted after NYC, became overtly aware of

the problem, evidenced by NYC having to settle Plaintiff's prior suit, and yet no attempts were made to educate the employees and supervisors at the DOC of the importance of religious freedom in the workplace.

84. The existence of the *de facto* municipal policy is causally related to the deprivation of Plaintiff's constitutional rights protected by the Free Exercise Clause of the First Amendment.

85. As a consequence thereof, Lori Argo has been injured and she is entitled to compensatory damages to be determined by the trier of fact and awards of costs and attorneys' fees are appropriate pursuant to 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF FOR VIOLATING PLAINTIFF'S RIGHTS UNDER THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK PURSUANT TO §8-107(3) et seq.

86. Plaintiff repeats the prior allegations as though fully stated herein.

87. By the actions described above, the Plaintiff was deprived of her rights secured by New York City Administrative Code §8-107(3) including, but not limited to her right to be free from discrimination based on her religion.

88. As a consequence thereof, Lori Argo has been injured and she is entitled to both compensatory and punitive damages in amounts to be determined by the trier of fact and awards of costs and attorneys' fees are appropriate pursuant to the Administrative Code.

## FOURTH CLAIM FOR RELIEF FOR VIOLATING PLAINTIFF'S RIGHTS UNDER THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK §8-107(6) VIA AIDING AND ABETTING IN THE VIOLATIONS OF PLAINTIFF'S RIGHTS

89. Plaintiff repeats the prior allegations as though fully stated herein.

90.     By the actions described herein, the Plaintiff was deprived of her rights secured by the New York City Administrative Code §8-107(3) as well as in violation of New York City Administrative Code §8-107(6) by the Defendants who aided, abetted, incited, compelled or coerced the doing of the acts forbidden under §8-107 and in so doing violated Plaintiff's right to be free from discrimination based on her religion.

91.     As a consequence thereof, Lori Argo has been injured and she is entitled to both compensatory and punitive damages in amounts to be determined by the trier of fact and awards of costs and attorneys' fees are appropriate pursuant to the Administrative Code.

**FIFTH CLAIM FOR RELIEF UNDER THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK §8-107(13) AGAINST THE CITY OF NEW YORK PREMISED ON EMPLOYER LIABILITY FOR THE BEHAVIOR OF ITS EMPLOYEES AND AGENTS IN VIOLATING PLAINTIFF'S RIGHTS**

92.     Plaintiff repeats the prior allegations as though fully stated herein.

93.     By the actions described herein, the Plaintiff was deprived of her rights secured by the New York City Administrative Code §8-107(3) by the City of New York pursuant to New York City Administrative Code §8-107(13) in that the City of New York is liable for the violations of Plaintiff's rights by its employees and agents.

94.     Defendants violated the Administrative Code §8-107(3) as more fully set forth above.

95.     As a consequence thereof, Lori Argo has been injured and she is entitled to compensatory damages in an amount to be determined by the trier of fact and awards of costs and attorneys' fees are appropriate pursuant to the Administrative Code.

-12-

**SIXTH CLAIM FOR RELIEF UNDER THE ADMINISTRATIVE
CODE OF THE CITY OF NEW YORK §8-107(7) AGAINST THE DEFENDANTS
PREMISED ON RETALIATION AGAINST THE PLAINTIFF FOR BRINGING A
CIVIL ACTION TO REDRESS VIOLATIONS OF HER RIGHTS
<u>AS PROVIDED BY THE ADMINISTRATIVE CODE §8-107</u>**

96.     Plaintiff repeats the prior allegations as though fully stated herein.

97.     By the actions described herein, the Plaintiff was deprived of her rights secured by

the  New York City Administrative Code in that the Defendants retaliated against the Plaintiff

for bringing a civil action for violations of her rights protected by the New York City

Administrative Code §8-107.

98.     As a consequence thereof, Lori Argo has been injured and she is entitled to both

compensatory and punitive damages in amounts to be determined by the trier of fact and awards

of costs and attorneys' fees are appropriate pursuant to the Administrative Code.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that judgment be entered as follows:

    (A)     Declaratory relief as follows:

        1.     Plaintiff's rights under the Free Exercise Clause of

           the First Amendment to the United States

           Constitution were violated;

        2.     Plaintiff's rights under New York City

           Administrative Code §8-501 et seq were violated.

    (B)     Compensatory damages in an amount to be fixed at trial;

(C)     By reason of the wanton, willful and malicious character of the conduct

complained of herein, punitive damages from the individual Defendants in

an amount to be fixed at trial;

(D)     An award to Plaintiff of the costs and disbursements herein;

(E)     An award of attorney's fees under the relevant statutes, including but not

limited to 42 U.S.C. §1988 and New York City Administrative Code §8-

502(f); and

(F)     Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       August 25, 2018

                                        _____/ s /_____
                                        Fred Lichtmacher FL-5341
                                        The Law Office of Fred Lichtmacher, PC
                                        Attorneys for Plaintiff
                                        116 West 23rd Street - Suite 500
                                        New York, New York 10011
                                        (212) 922-9066
                                        Empirestatt@aol.com

To:     The City of New York
        100 Church Street
        New York, New York 10007

-14-